ESTATE OF OTIS C. HUBERT, DECEASED, C&S/SOVRAN TRUST COMPANY (GEORGIA), N.A., A NATIONAL BANKING ASSOCIATION, CO-EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hubert v. Commissioner
Docket No. 22333-90
United States Tax Court
T.C. Memo 1993-482; 1993 Tax Ct. Memo LEXIS 491; 66 T.C.M. (CCH) 1064; October 19, 1993, Filed *491 Decedent's will provided for the creation of two subtrusts for the purposes of implementing the missionary work of charitable organizations through two named individuals and of establishing foreign mission field medical clinics. Held: The bequests to the subtrusts qualify for the charitable deduction. For petitioner: David W. Aughtry, James M. McCarten and David W. Seigel. For respondent: Willard N. Timm, Jr.
CLAPP
CLAPP
MEMORANDUM OPINION CLAPP, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $ 14,052,146. The issue for decision is whether the bequests in the amount of $ 100,000 each to two subtrusts providing for the support of the missionary work of charitable organizations through two named individuals and for the establishment of foreign mission field medical clinics qualify for a charitable deduction. [1]
*492 This case was submitted fully stipulated under Rule 122. We incorporate by reference the stipulation of facts and attached exhibits. All section references are to the Internal Revenue Code as in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner is the Estate of Otis C. Hubert (decedent). Decedent was a resident of Marietta, Georgia, when he died on June 2, 1986. C&S/Sovran Trust Co. (C&S) is the coexecutor of decedent's estate. On the date the petition was filed, C&S had its principal place of business in Atlanta, Georgia. In January 1982, decedent executed the last will to be signed prior to his death (the 1982 will). The 1982 will was modified three times by codicils executed between February 4, 1982, and June 8, 1983. The 1982 will provided for the establishment of two subtrusts funded with $ 100,000 each. The income of each subtrust was to be paid to a charitable organization for the establishment of foreign mission field medical clinics and to support the missionary work of the charity through a named individual during his lifetime, including support for the missionary during retirement. *493 The remainder interests were to be distributed to each organization to be used "for its missionary work as it sees fit." When decedent first moved to Atlanta in 1928, he joined the Baptist Tabernacle Church (Baptist Tabernacle) in the inner city area. He continued to attend Baptist Tabernacle until 1952, when he moved from the downtown area to Marietta outside of Atlanta. From that time to his death, he regularly attended the First Baptist Church of Marietta rather than Baptist Tabernacle. During his life, decedent and a man by the name of John Nance (Nance) were asked to sponsor two missionaries from the church, Roland Cornelius (Cornelius) and Redford Trammell (Trammell), whom Baptist Tabernacle could not otherwise finance. Decedent had no relationship with the missionaries other than through Baptist Tabernacle. Decedent and Nance agreed to sponsor the missionaries and did so through Baptist Tabernacle for a number of years until Nance was no longer able. At that time, decedent assumed Nance's share of the responsibility. Trammell, who was born in 1931, is an independent Baptist missionary, commissioned by North Avenue (now Park View) Baptist Church, Northlake, Illinois, *494 and is supported by several churches and individuals. He is presently a member of Calvary Baptist Church, Sparta, Tennessee. Trammell entered foreign missionary work in September 1960 when he arrived in Peru. Except for furloughs in the United States, Trammell has been working continuously in Peru helping Peruvians start Baptist churches. So far he has been able to start 15 churches, most of which have their own pastors and buildings. He has not made any specific agreement with any church or other organization concerning the distribution of the funds designated for his work by decedent. Cornelius, who was born in 1933, was affiliated with Baptist International Missions, Inc. (BIMI), at the time the 1982 will was executed. BIMI has a home office in Chattanooga, Tennessee, and is supported by Baptist Tabernacle. Cornelius met decedent as a youth when decedent taught him Sunday school at Baptist Tabernacle. He began working as a missionary in 1956. Generally, his and his wife's work has been missionary radio. He spent 16 years in Africa, another 14 years with BIMI, part of which time he worked on a project called Lighthouse of the Caribbean, and thereafter, and to date, he *495 has been associated with Aviation Radio Missionary Services, a tax-exempt organization. Other than decedent's teaching Sunday school to Cornelius when he was a youth, decedent had no personal contact or relationship with either of the missionaries. The facts before us indicate that decedent was interested in supporting the missionary work of the church through Trammell and Cornelius and not in supporting the two individuals themselves. By establishing the two subtrusts, decedent continued, after his death, the support for missionary work which he began during his life through Baptist Tabernacle. Respondent argues that these bequests amount to no more than life estates to the two named individuals and, therefore, do not meet the statutory requirement for charitable deductions. Petitioner contends that respondent mischaracterizes the bequests, and that the bequests are exclusively for charitable purposes, thereby qualifying for the charitable deduction. Section 2055(a) provides in pertinent part: SEC. 2055(a). In General -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the *496 amount of all bequests, legacies, devises, or transfers -- * * * (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual * * *; A bequest in trust for a charity meets the requirement that the bequest be "for the use of" the charity. Davis v. United States, 495 U.S. 472, 482 (1990). Since the bequests in question are in trust, the income and remainder of which are to be given to "a charitable organization described in Section 170(c), Section 2055(a) and Section 2522(a)", the bequests appear to meet the threshold requirement of section 2055(a). The only remaining question is whether the charitable purpose of the subtrusts is negated by the direction that the income from the subtrusts be used to support the missionary work and retirement of the two named individuals. Respondent argues that the bequests are, in fact, to the two named individuals rather than the charitable organizations because the charities do not fully control the use of the *497 funds, decedent's intent was to benefit the individuals rather than the organizations, and the "trusts were designed to benefit particular individuals and not the general public as a whole." Respondent relies on Davis and Thomason v. Commissioner, 2 T.C. 441 (1943), as support for the contention that for a contribution to be deductible, the organization must be in complete control of how the funds will be used. However, both of those cases are distinguishable. In Thomason, the taxpayers paid the educational expenses of a child who was under the legal guardianship of the IllinoisChildren's Home and Aid Society (the society). The taxpayers did not give any money directly to the society; instead, they directly paid the school, which was not a tax-exempt organization. The Court held that the amounts paid were not paid to or for the use of the society because the payments were "to and for the benefit of this particular child and no one else." Id. at 444-445. In Davis v. United States, supra, the taxpayers transferred funds to their sons' checking accounts to cover expenses the *498 sons would incur while serving as missionaries for the Church of Jesus Christ of Latter-day Saints. The Court held that the funds were not paid "for the use of" a charity because the money was not transferred into a legally enforceable trust or in a similar legal arrangement for the church. Davis v. United States, 495 U.S. at 486. Under Davis and Thomason, the test is not whether the charitable organization has full control of the funds, but rather is whether the charitable organization has a legally enforceable right to the funds. In neither Davis nor Thomason did the charitable organization actually receive the funds, either directly or in trust. In the case before us, the income and later the principal are held in a legally enforceable trust for charitable organizations which have control over the funds. Respondent argues that the charitable purpose fails because the intent and the actual effect of the gifts were to benefit the named individuals and not the charitable organizations or the community as a whole. However, we find that the facts, as set forth above, do not support that interpretation. The will provides, in pertinent *499 part: ITEM VII
A. I hereby give, devise and bequeath to my Trustees, hereinafter named, as Trustees, the sum of Two Hundred Thousand Dollars ($ 200,000) to be equally divided and held in two separate Subtrusts of One Hundred Thousand Dollars ($ 100,000) each, one subtrust to be the Redfort C. Trammell Subtrust and one to be Rolen Cornelius, Jr. Subtrust. [2] My trustees shall hold such assets, invest and reinvest them and dispose of the net income and principal as hereinafter provided: (1) For and during the life of Redfort C. Trammell as to his Subtrust and for and during the life of Rolen Cornelius, Jr. as to his Subtrust, the Trustees shall deliver the net income during their respective lives as said individual shall direct the Trustees, to a charitable organization described in Section 170(c), Section 2055(a) and Section 2522(a) of the Internal Revenue Code of 1954, as amended, for the purpose of implementing said individual's missionary work and for the establishment of foreign mission field medical clinics. Upon their respective retirements the income and principal shall be given to the same organization to provide for the retirement of said individuals and their respective *500 spouses from said missionary work and after their death the remainder, if any, to the organization for its missionary work as it sees fit. If no such organization is so designated, the Trustees shall divide such remaining sums in the manner set out in ITEM X. Under ITEM X, the remainder would pass to charity. Although we are concerned that the language of the bequests, on its face, indicates that decedent may have been focusing on the individual missionaries, we are satisfied, on the facts before us, that decedent intended the bequests to be used to implement the missionary work of the charitable organizations through the named missionaries, as well as through the building of foreign mission field medical clinics. Both of the missionaries have been engaged in missionary work for over 30 years. Decedent had *501 been supporting them at the request of Baptist Tabernacle during much of his life and had no connection with the two other than through the church. The retirement provisions further decedent's charitable purpose by ensuring that the missionaries will be able to continue their work without concern for what will happen to them when the time comes to retire. During the retirement period, the charities will continue to control the funds and they may provide for the retirement of the missionaries as they see fit. Under the provisions of the will, upon retirement of the missionaries, the income and principal of the trusts are to be given to the charities "to provide for" the retirement of the missionaries and their wives. The charities have complete discretion to use the funds in any manner which fits the stated purpose, including choosing the amounts of the funds to be used and the methods of using those funds. Decedent contemplated that the trust funds might not be used up during retirement as is evidenced by his provisions for the charities to use the remainder for their missionary work as they see fit. On these facts, we conclude that decedent intended to benefit the general public, *502 not the two named missionaries. Moreover, we find that the charitable organizations have substantial control over the use of the funds and were not meant to be mere conduits to funnel money to the missionaries. [3] The fact that decedent directed the organization to use the funds for specific purposes does not defeat the charitable nature of the bequests. Under general trust principles, the organizations have a fiduciary duty to use the funds as directed; however, they have complete discretion to determine the most appropriate ways to implement the directed purposes. See Bogert, Trusts & Trustees, secs. 363, 391, 393, 394 (2d ed. 1991); IVA Fratcher, Scott on Trusts, secs. 348.1, 379 (4th ed. 1989). We conclude that the charitable organizations had sufficient control and enforceable rights over the bequests to ensure that the funds were used for charitable purposes, as is required by the statute. *503 The charitable nature of the bequests is further protected by the Attorneys General of Georgia and the State or States in which the charitable organizations are located. The Attorneys General are charged with ensuring that the charitable purposes of the trust are carried out. See Bogert, supra sec. 411; Fratcher, supra sec. 391. We hold that the bequests to the missionary subtrusts are for the benefit of charitable organizations, are exclusively for charitable purposes, and therefore qualify as charitable deductions under section 2055. Footnotes
1. In Estate of Hubert v. Commissioner, 101 T.C.    ↩ (1993), we decided the other three issues in this case. The Court severed this fourth issue for separate decision.
2. Although the stipulation of facts refers to Redford Trammell and Roland Cornelius and the will refers to Redfort Trammell and Rolen Cornelius, we assume that the references are to the same individuals.↩
3. We note that on different facts we might conclude that the charitable organization was a mere conduit to funnel money to an individual and, therefore, lacked sufficient control over the funds. In such a circumstance, because the bequest was intended to benefit one individual rather than the general public, the bequest would not qualify for a charitable deduction.↩